**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

MARCUS A. KNOTT,                                          :

                                 Plaintiff,

   -vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,
                                 Defendant.            :

Case No. 3:10-cv-011

District Judge Thomas M. Rose
Magistrate Judge Michael R. Merz

**REPORT AND RECOMMENDATIONS**

Plaintiff brought this action pursuant to 42 U.S.C. §405(g) for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v. Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence

is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988); *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978); *Houston v. Secretary of Health and Human Services*, 736 F.2d 365 (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984). However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner, supra.* If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion. *Elkins v. Secretary of Health and Human Services*, 658 F.2d 437, 439 (6th Cir. 1981).

To qualify for disability insurance benefits (SSD), a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. § 423. To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any other substantial gainful employment which exists in the national economy. 42 U.S.C. §423(d)(2).

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520. First, if the claimant is currently engaged in substantial

2

gainful activity, the claimant is found not disabled.  Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments;  if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1. If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded.  20 C.F.R. §404.1520(d).  Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment;  if not, the claimant is found not disabled.  Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform.  *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff protectively filed an application for SSD on July 6, 2006, alleging disability from September 30, 2005, due to extreme pain, limited mobility of hands, pain in feet, ankles, legs and hands, numbness from mid-chest to knees, occasional blurred vision, synovitis, chondromalacia, and possible torn cartilage of the right knee.  (Tr. 85-86; 103).  Plaintiff's application was denied initially and on reconsideration.  (Tr. 54, 58).  Administrative Law Judge Amelia Lombardo held a hearing, (Tr. 25-51), and subsequently determined that Plaintiff is not disabled.  (Tr. 9-23).  The Appeals Council denied Plaintiff's request for review, (Tr. 1-4), and Judge Lombardo's decision became the Commissioner's final decision.

In determining that Plaintiff is not disabled, Judge Lombardo found that Plaintiff has severe degenerative disc disease of the cervical spine, mild peripheral polyneuropathy, and residuals

3

of right knee surgery, but that he does not have an impairment or combination of impairments that meet or equal the Listings. (Tr. 14, ¶ 3; Tr. 17, ¶ 4). Judge Lombardo also found that Plaintiff has the residual functional capacity to perform a limited range of light work. (Tr. 18, ¶ 5). Judge Lombardo then used section 202.14 of the Grid as a framework for deciding, coupled with a vocational expert's (VE) testimony, and concluded that there is a significant number of jobs in the economy that Plaintiff is capable of performing. (Tr. 10, ¶ 10). Judge Lombardo concluded that Plaintiff is not disabled and therefore not entitled to benefits under the Act. (Tr. 22).

Plaintiff consulted with orthopedist Dr. Vitols on August 5, 2004, who reported that Plaintiff had persistent complaints of right knee pain with swelling, occasional popping, catching, and giving out. (Tr. 199-200). Dr. Vitols also reported that Plaintiff was working as a maintenance worker, his right knee came into terminal extension, that flexion arc was painful, there was joint line pain with a positive reverse McMurray's, a 1/6 effusion, and minimally decreased quadriceps strength on the right as compared to the left. *Id.* Dr. Vitols identified Plaintiff's diagnosis as synovitis with a probable torn lateral meniscus. *Id.* Dr. Vitols injected Plaintiff's knee and fitted Plaintiff with a knee sleeve. *Id.* On November 15, 2004, Dr. Vitols noted that Plaintiff continued to have knee pain with buckling and popping and he recommended Plaintiff undergo surgery for treatment of a torn lateral meniscus. (Tr. 197). Plaintiff underwent arthroscopic surgery on November 30, 2004, which revealed synovitis and fibrotic plica in his medial patellofemoral joint, and a Grade 2 chondromalacia of the patella central pole and medial femoral condyle. (Tr. 189). Plaintiff subsequently participated in physical therapy. (Tr. 186-88).

In September 2005 Plaintiff again consulted with Dr. Vitols for recurrent right knee pain. Dr. Vitols noted that Plaintiff's x-rays and symptoms were consistent with early

chondromalacia and he injected Plaintiff's knee with Dalalone and Marcaine. (Tr. 194). On September 15, 2005, Dr. Vitols reported that Plaintiff had experienced only minimal, if any, improvement after the injection. *Id.* Dr. Vitols opined on October 19, 2005, that Plaintiff was no longer able to perform his previous job as a maintenance worker, but that he was employable with the restrictions of no stooping, bending, climbing ladders or stairs, and no lifting over approximately fifty to seventy-five pounds. (Tr. 193).

An April 18, 2006, EMG of Plaintiff's lower extremities was consistent with a diffuse distal sensory peripheral neuropathy and demonstrated no evidence of any focal nerve entrapment syndromes, a radiculopathy, or myopathy. (Tr. 203).

The record contains a copy of Plaintiff's treatment notes from Bellbrook Family Practice dated February 20, 2003, through February 24, 2009. (Tr. 321-55; 460-66; 479). A review of those notes reveals that Plaintiff received treatment at that facility for various medical conditions including dizziness, acute thoraco-lumbar strain, neuropathy, nicotine addiction, contusion of the right ribs, urinary tract infection, back pain, hypertension, insomnia, paresthesias/hand pain, acid reflux, folate deficiency, alcohol abuse, increased liver enzymes, bilateral leg pain, right knee effusion, chest and arm pain, pharyngitis, depression, and low blood pressure. *Id*.

Examining psychologist Dr. Schulz reported on November 8, 2006, that Plaintiff completed school through the tenth grade, his speech was normal, his affect was appropriate and congruent, his mood was euthymic, and that his motor activity was calm. (Tr. 209-14). Dr. Schulz also reported that Plaintiff's memory was in the adequate range, he was oriented, alert and responsive, his judgment was sufficient to make life decisions and conduct his own living arrangements, and that his fund of knowledge placed him in the low average range. *Id.* Dr. Schulz

identified Plaintiff's diagnosis as depressive disorder NOS and he assigned him a GAF of sixty-two. *Id.* Dr. Schulz opined that Plaintiff's abilities to relate to others, understand, remember, and follow instructions, maintain attention and concentration to perform simple repetitive tasks, and to withstand the stress and pressures associated with day-to-day work activity were minimally or mildly impaired. *Id.*

Plaintiff first sought treatment from neurologist Dr. Svetic on May 31, 2006, from whom he continued to receive treatment through at least December, 2008. (Tr. 256-73; 356-91; 423-28; 454-59). When Dr. Svetic first examined Plaintiff, he noted that his sensory exam showed that pinprick was decreased in his upper legs and dorsal aspect of his hands and decreased slightly in his trunk. *Id.* Dr. Svetic also noted that Plaintiff's history of severe burning in his feet, history of numbness in his lips and trunk, severe tingling in his hands, blurred vision, and dizziness could be due to demyelinating disease or could be a somatoform disorder due to a significant amount of anxiety, and that his long history of low back pain could be due to lumbosacral radiculopathy. *Id.*

A June 1, 2006, EMG indicated bilateral median mononeuropathy at the wrist which was mild to moderate on the left and minimal on the right and a suggestion of minimal peripheral polyneuropathy versus bilateral S1 radiculopathy. *Id.*

Plaintiff continued to receive treatment from Dr. Svetic who prescribed various medications. *Id.* Over time, Dr. Svetic reported that Plaintiff had numbness in his arms, legs, and abdominal area, pain in his feet which became severe when he walked, decreased pinprick and light touch in his arms, legs, and abdomen, a mild intention tremor, and trace reflexes. *Id.* Dr. Svetic identified Plaintiff's diagnosis as small fiber neuropathy and continued to treat Plaintiff with

6

medications. *Id.* Eventually, Plaintiff reported to Dr. Svetic some improvement in his symptoms with the medications, but he continued to report significant pain in his feet when he walked. *Id.*

Dr, Svetic continued to report that Plaintiff had decreased sensation and trace to absent reflexes, and noted that Plaintiff had experienced weight gain and headaches as medication side effects. *Id.* A December, 2007, EMG revealed minimal sensory peripheral polyneuropathy and a mild L5-S1 radiculopathy on the left. *Id.* Plaintiff continued to report to Dr. Svetic that he was experiencing moderate to moderately severe pain in his feet and legs and intermittent numbness in his hands and Dr. Svetic indicated that depression and anxiety were playing a role in Plaintiff's impairments. *Id.*

Examining neuropsychologist Dr. Jewell reported on June 12, 2008, that Plaintiff had short-term memory and word-finding complaints, had been under a high degree of stress, quit drinking two years ago but prior to that drank an average of twelve beers per day for more than thirty years, and that he had a high degree of somatic symptoms. (Tr. 400-04). Dr. Jewell also reported that Plaintiff's intellectual functioning was average, his attention was high average, his memory was average, his receptive and expressive language were high average, his spatial perception was average, his fine motor speed was mildly impaired, his abstract reasoning was average, and he displayed significant depression and anxiety and a strong tendency to express emotional distress through somatic complaints. *Id.* Dr. Jewell identified Plaintiff's diagnoses as major depressive disorder, moderate to severe, anxiety disorder NOS, somatoform disorder NOS, and probable past history of alcohol abuse now in remission. *Id.*

During the time that Dr. Svetic treated Plaintiff, he referred Plaintiff to physicians at the Cleveland Clinic neurology clinic for evaluation. On August 15, 2006, Plaintiff's health care

providers at the Cleveland Clinic, Drs. Hantus and Shields, reported that Plaintiff demonstrated gradient of diminished pinprick in a glove and stocking pattern (mid-shin to mid-palm), diminished vibration sensation bilaterally, and diminished temperature sense bilaterally. (Tr. 237-49). Drs. Hantus and Shields also reported that Plaintiff had a wide-based gait and was unable to tandem walk. *Id.* On November 28, 2006, Drs. Hantus and Shields noted that Plaintiff's examination was essentially unchanged and his diagnoses were identified as idiopathic autonomic neuropathy, depressive disorder, and skin sensation disturbances. *Id.*

An MRI of Plaintiff's cervical spine which was performed on August 7, 2008, revealed degenerative changes at C3-4 where a left lateral disc protrusion and a mild canal stenosis were present and facet arthropathies which narrowed the neural exit foramina on the left at C5-6 and C6-7. (Tr. 436).

Plaintiff consulted with orthopedist Dr. Tigyer on September 17, 2008, who reported that Plaintiff complained of bilateral arm numbness for the past six to eight months, some pain in the left side of his head, and some left-sided weakness at times. (Tr. 433-38). In addition, Dr. Tigyer essentially reported that the examination of Plaintiff was normal. *Id.* Dr. Tigyer identified Plaintiff's diagnoses as cervical spondylosis and left greater than right upper extremity pain. *Id.*

As noted above, Plaintiff continued to receive treatment from physicians at Bellbrook Family Practice through at least February, 2009. In February and March, 2009, Dr. Murphy, Plaintiff's treating physician at Bellbrook Family Practice at the time, reported that Plaintiff was able to lift and carry twenty pounds occasionally and no weight frequently, stand/walk for thirty minutes in an eight-hour day and for thirty minutes without interruption, sit for four hours in an eight-hour day and for thirty minutes without interruption, that he was not able to perform any

postural activities or perform household chores, and that Plaintiff's subjective complaints provided the basis for this assessment. (Tr. 468-78). Dr. Murphy also reported that Plaintiff was not able to perform either light or sedentary work and that he was totally and permanently disabled. *Id.* Dr. Murphy reported further that Plaintiff's diagnoses were small fiber polyneuropathy, depression, fatigue, chronic dizziness, chronic leg pain, and back pain and that he was not able to perform any work-related mental activities. *Id.*

Plaintiff alleges in his Statement of Errors that the Commissioner erred by rejecting his treating physician Dr. Murphy's opinion and by failing to consider his impairments in combination. (Doc. 8).

"In assessing the medical evidence supporting a claim for disability benefits, the ALJ must adhere to certain standards." *Blakley v. Commissioner of Social Security,* 581 F.3d 399, 406 (6th Cir. 2009). "One such standard, known as the treating physician rule, requires the ALJ to generally give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians because

> these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone of from reports of individual examinations, such as consultative examinations or brief hospitalizations."

*Id.*, *quoting*, *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544, (6th Cir. 2004), *quoting,* 20 C.F.R. § 404.1527(d)(2).

"The ALJ 'must' give a treating source opinion controlling weight if the treating source opinion is 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.'"

9

*Blakley,* 581 F.3d at 406*, quoting, Wilson,* 378 F.3d at 544*.* "On the other hand, a Social Security Ruling[1] explains that '[i]t is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record.'" *Blakley, supra, quoting,* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *2 (July 2, 1996). "If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley,*582 F.3d at 406*, citing, Wilson,* 378 F.3d at 544*, citing* 20 C.F.R. § 404.1527(d)(2).

"Closely associated with the treating physician rule, the regulations require the ALJ to 'always give good reasons in [the] notice of determination or decision for the weight' given to the claimant's treating source's opinion." *Blakley,* 581 F.3d at 406, *citing,* 20 C.F.R. §404.1527(d)(2). "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Blakley,* 581 F.3d at 406-07*,citing,* Soc.Sec.Rule 96-2p, 1996 WL 374188 at *5. "The *Wilson* Court explained the two-fold purpose behind the procedural requirement:

> The requirement of reason-giving exists, in part, to let claimants
> understand the disposition of their cases, particularly in situations
> where a claimant knows that his physician has deemed him disabled

---

FN 1. Although Social Security Rulings do not have the same force and effect as statutes or regulations, "[t]hey are binding on all components of the Social Security Administration" and "represent precedent, final opinions and orders and statements of policy" upon which the agency relies in adjudicating cases. 20 C.F.R. § 402.35(b).

>and therefore might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied. *Snell v. Apfel,* 177 F.3d 128, 134 (2nd Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule."

*Blakley,* 581 F.3d at 407*, citing, Wilson,* 378 F.3d at 544. "Because the reason-giving requirement exists to ensure that each denied claimant received fair process, the Sixth Circuit has held that an ALJ's 'failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight' given '*denotes a lack of substantial evidence,* even where the conclusion of the ALJ may be justified based upon the record.'" *Blakley, supra, quoting, Rogers v. Commissioner of Social Security.,* 486 F.3d 234, 253 (6th Cir. 2007)(emphasis in original).

Judge Lombardo rejected Dr. Murphy's opinion that Plaintiff is disabled on the bases that it was internally inconsistent, not supported by the objective clinical findings, and inconsistent with other evidence of record. (Tr. 20-21).

Although Dr. Murphy opined that Plaintiff is totally and permanently disabled, he admittedly based his opinion on Plaintiff's subjective complaints. Indeed, Dr. Murphy provided few, if any, clinical findings to support his opinion. In addition, a review of Plaintiff's treatment notes from Sugarcreek Family Practice where Dr. Murphy was Plaintiff's treating physician, reveal, again, few objective clinical findings. Indeed, many times, Plaintiff's treatment notes simply reflected Plaintiff's subjective complaints.

Further, as Judge Lombardo noted, in opining that Plaintiff is disabled, Dr. Murphy reported that Plaintiff was able to lift and carry twenty pounds occasionally and no weight frequently which is an inconsistent finding as to Plaintiff's lifting and carrying abilities. In addition, Dr.

Murphy reported that Plaintiff was not able to perform any household chores, but that is inconsistent with Plaintiff's own testimony at the hearing. *See, e.g.,* Tr. 35-37 (Plaintiff testified that he does light housework, sweeps, does the dishes, cooks, shops, and cleans the yard).

No other physician of record, including treating neurologist Dr. Svetic, treating orthopedist Dr. Vitols, consulting orthopedist Dr. Tigyer, and consulting neurologists Drs. Hantus and Shields opined that Plaintiff is disabled. Indeed, Dr. Svetic reported some positive clinical findings, noting that Plaintiff was improving with treatment with medications. Dr. Vitols opined that, although Plaintiff was not able to perform his previous work as a maintenance worker, he was employable with some restrictions. Dr. Tigyer reported that Plaintiff's examination was essentially normal. Dr. Murphy's opinion that Plaintiff is disabled is inconsistent with these physicians' findings and opinions. Finally, Dr. Murphy's opinion is inconsistent with the reviewing physicians' opinions. (Tr. 229-36; 53).

Under these facts, the Commissioner had an adequate basis for rejecting Dr. Murphy's opinion that Plaintiff is disabled.

Plaintiff essentially argues that the Commissioner erred by failing to find that his carpal tunnel syndrome and cervical radiculopathy are severe impairments.

An impairment can be considered as not severe only if the impairment is a "slight abnormality" which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, and work experience. *Farris v. Secretary of Health and Human Services,* 773 F.2d 85, 90 (6th Cir. 1985)(citation omitted); *see also, Bowen v. Yuckert,* 482 U.S. 137 (1987).

An ALJ does not commit reversible error in finding a non-severe impairment where

12

the ALJ determines that a claimant has at least one other severe impairment and then goes on with the remaining steps in the disability evaluation, since the ALJ considers all impairments, including non-severe impairments, in determining residual functional capacity to perform work activities. *See, Maziarz v. Secretary of Health and Human Services,* 837 F.2d 240, 244 (6th Cir. 1987).

As noted above, Judge Lombardo found at step two that Plaintiff has several severe impairments. Judge Lombardo then continued through the remaining steps in the sequential evaluation process before finding that there is a significant number of jobs in the economy that Plaintiff is able to perform. Therefore, Judge Lombardo considered all of Plaintiff's impairments, including his alleged carpal tunnel syndrome and cervical radiculopathy, in finding that he is not disabled. Accordingly, the Commissioner did not err by failing to find that Plaintiff has severe carpal tunnel syndrome or severe cervical radiculopathy. *Maziarz*, *supra.*

Plaintiff argues next that the Commissioner failed to consider his impairments in combination.

The Act requires the Commissioner to consider the combined effects of impairments that individually may be nonsevere, but which in combination may constitute a medically severe impairment or otherwise evince a claimant's disability. *Foster v. Bowen,* 853 F.2d 483, 490 (6th Cir. 1988) (citation omitted). A disability may result from multiple impairments, no one of which alone would constitute a full disability. *Loy v. Secretary of Health and Human Services,* 901 F.2d 1306 (6th Cir. 1990). An ALJ's individual discussion of multiple impairments does not imply that he failed to consider the effect of the impairments in combination, where the ALJ specifically refers to a "combination of impairments" in finding that the plaintiff does not meet the Listings. *Id.* (citation omitted).

13

A review of Judge Lombardo's decision reveals that she consistently referred to Plaintiff's impairments in the plural. *See, e.g.,* Tr. 14, 15, 17, 18. In addition, Judge Lombardo specifically referred to Plaintiff's impairments in combination in determining that he does not satisfy the Listings. *See,* Tr. 17, ¶ 4. *Loy, supra.*

Plaintiff alleges that the Commissioner erred by failing to consider the impact of his alleged mental impairments on his experience of pain. Essentially, Plaintiff's position is that Judge Lombardo erred by failing to find that he has a severe mental impairment.

As noted above, Judge Lombardo found at step two that Plaintiff has several severe impairments and then continued through the remaining steps in the sequential evaluation process before finding that there is a significant number of jobs in the economy that Plaintiff is able to perform. Therefore, Judge Lombardo considered all of Plaintiff's impairments in finding that he is not disabled.

In addition, Judge Lombardo considered Plaintiff's alleged mental impairments including his allegations of depression, anxiety, and confusion, and concluded that Plaintiff was, at worst, mildly limited by his alleged mental impairments. (Tr. 15-17). Judge Lombardo's conclusion is supported by the evidence. For example, examining psychologist Dr. Schulz determined that Plaintiff was, at worst, minimally to mildly impaired. In addition, examining neuropsychologist Dr. Jewell determined that Plaintiff's level of functioning was average. Finally, Judge Lombardo's conclusion is supported by the reviewing psychologist's opinion. (Tr. 215-28).

The Court's duty on appeal is not to re-weigh the evidence, but to determine whether the decision below is supported by substantial evidence. *See, Raisor v. Schweiker,* 540 F.Supp. 686 (S.D.Ohio 1982). The evidence "must do more than create a suspicion of the existence of the fact

14

to be established. ... [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *LeMaster v. Secretary of Health and Human Services,* 802 F.2d 839, 840 (6th Cir. 1986), *quoting, NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 (1939). The Commissioner's decision in this case is supported by such evidence.

It is therefore recommended that the Commissioner's decision that Plaintiff was not disabled and therefore not entitled to benefits under the Act be affirmed.

October 26, 2010.

*s/ Michael R. Merz*
United States Magistrate Judge

NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).